STATE TO USE OF LINCOLN COUNTY *v.* GREEN, COUNTY SUPERINTENDENT OF EDUCATION ET AL.

[71 South 171.]

1. SCHOOLS AND SCHOOL DISTRICTS. *Public schools. Examination of teachers. Fees. County superintendent. Actions. Liability.*

Sections 4549-4590-4591, Code 1906, construed together do not require the collection and deposit with the county treasurer by the superintendent of education of the county, of the institute fee therein provided for when special examinations are held under section 4549, this section provides for emergency cases and the licenses issued are valid only until the next examination.

2. SCHOOLS AND SCHOOL DISTRICTS. *County superintendent. Actions. Liability.*

The county superintendent is vested with both executive and judicial powers, and the efficiency of the public school system requires that large administrative powers be vested in him and neither he nor his bondsmen are liable for errors of judgment and discretion in the absence of fraud, though by reason of such errors he paid out more money to teachers than they were legally entitled to, the work for which he paid being within the jurisdiction of his office.

APPEAL from the chancery court of Lincoln county.
HON. G. G. LYELL, Chancellor.

Bill by the state of Mississippi, for use of Lincoln county against Edgar Green, county superintendent and others. From a decree dismissing the bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Lamar F. Easterling,* Assistant Attorney-General, for appellant.

*Jones & Tyler,* for appellees.

STEVENS, J., delivered the opinion of the court.

The state of Mississippi, for the use of Lincoln county, exhibited its bill of complaint against Edgar Green, coun-

ty superintendent of education, and the United States Fidelity & Guaranty Company, surety on his official bond, seeking to recover large sums of money for the alleged failure of this officer to perform the duties of his office, constituting what the bill avers to be a breach of the bond. The action is instituted by and through H. V. Wall, the district attorney, and is based on several grounds or causes of complaint. Appellees, as defendants in the court below, filed special demurrers to each of the separate alleged breaches of the bond or items claimed. The demurrers were sustained by the chancellor, the bill dismissed, and hence this appeal by the state.

The first item claimed is the aggregate sum of one hundred and eighty-one dollars and fifty cents, which the county claims should have been deposited with the county treasurer as a part of the institute fund and as the proceeds of the fees of fifty cents provided by section 4590, Code of 1906, to be collected by the county superintendent from applicants to teach. Under section 4549 of the Code, special examinations may be held, and under this section "the superintendent may require each teacher so examined to pay a fee of two dollars and fifty cents." The bill admits that the claim of one hundred and eighty-one dollars and fifty cents is made up of the fifty-cent fees which, it is alleged, the superintendent should have collected on the special examinations of teachers authorized by section 4549.

Construing sections 4549, 4590, and 4591 together, we do not think the statute requires the collection and deposit with the county treasurer of this institute fee when special examinations are held under section 4549. This section provides for emergency cases, and the licenses issued are valid only until the next examination.

The claim of five thousand, nine hundred and sixty-four dollars and thirty-five cents as the proceeds of pay certificates unlawfully issued to teachers holding illegal and fraudulent licenses was by consent of counsel withdrawn, leaving other items claimed as follows: six dollars

and fifty cents as excess money paid examiners: eight dollars and seventy-five cents unlawfully paid Mrs. Green, wife of the appellee, for service as member of the school board of examiners; four thousand, seven hundred and ninety-eight dollars and forty-seven cents paid teachers in excess of the amount called for by their contracts; eight thousand, nine hundred and twenty-seven dollars and sixty-five cents paid teachers with whom no contracts had been made; one hundred and forty-three dollars and fifty cents paid assistant teachers when the average attendance was not sufficient to justify the employment of an assistant; two hundred and two dollars and fifty cents paid assistant teachers in excess of the maximum salary allowed by law; two hundred and seventy-seven dollars paid teachers in excess of the amount allowed by law for the grade of license held by them; twelve thousand, seventy-six dollars and ninety-three cents alleged to have been paid on reports signed by some party other than the trustees; seven hundred and twenty-five dollars alleged to have been paid on reports signed by one trustee only; seven hundred and forty-four dollars and twenty-five cents alleged to have been paid on reports signed by no trustee at all.

The bill does not charge, and counsel in argument concede the point, that Mr. Green, as county superintendent, issued pay certificates or otherwise acted in the performance of the duties of his office with corrupt or fraudulent purposes, by any collusion with any teacher for the purpose of defrauding the county, or that Mr. Green profited by any of the several transaction complained of, or appropriated to his use a single dollar.

In our judgment the several special demurrers were properly sustained. While the officer whose acts are here brought in question may have acted indiscreetly in some instances, and while there may have been many irregularities in the conduct of the business of his office, it yet remains that he was a public officer charged with the duty of exercising his best judgment and discretion in the

performance of his official work, and in this action instituted on his official bond he is protected by the well-recognized principle of law that the officer is not liable for any errors or omissions done or suffered in the exercise of his judicial judgment or discretion. The county superintendent of eductation is the administrative officer for all the public schools and free school system of his county. It is true that pay certificates issued by him entitle the several teachers to warrants upon the school fund of the county without previous allowance by the board of supervisors, but this only demonstrates the importance of his position as the chief officer of the schools, the superintendent of all teachers, and the head of the entire educational department of his county. The duty is devolved on him to employ teachers selected by the local trustees, to enter into contracts with them, and to pay them for their services. There is a statutory method or rule by which he is to be governed; but for errors of judgment and discretion, in the absence of fraud, he is not liable on his official bond or otherwise. There is no statute imposing liability for any of the items here claimed. To this extent the present case is differentiated from the case of *Paxton* v. *Baum,* 59 Miss. 531, and, with this distinction kept in mind, the principles announced by our own court in the Paxton Case are in accord with the views herein expressed. The same principle was early announced by the supreme court of the United States in *Kendall* v. *Stokes et al.,* 3 How. 87, 11 L. Ed. 506, as follows:

"A public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even although an individual may suffer by his mistake. A contrary principle would indeed be pregnant with the greatest mischiefs."

It will be borne in mind that the several matters complained of in the instant case were items of business

within the jurisdiction of the county superintendent, and the services charged to have been illegally paid for were services inuring to the benefit of the county, and not to Mr. Green; and the payments actually made were, in the language of Judge Campbell, in reference to "objects for which an appropriation of money is authorized." The superintendent is vested with both erecutive and judicial powers, and the efficiency of the public school system requires that large administrative powers be vested in him. In view of the fact, therefore, that the work paid for by the superintendent and the several alleged irregularities were within the jurisdiction of his office and no corruption is charged, the bill fails to state a cause of action. The decree of the chancellor is, accordingly, affirmed.

*Affirmed.*