GULLY, STATE TAX COLLECTOR, *v.* MCCLELLAN *et al.*

(Division B.   March 19, 1934.)

[153 So. 524.   No. 31118.]

Barbour & Henry, of Yazoo City, for appellant.

**Maynard, FitzGerald & Venable,** of Clarksdale, for appellees.

410

Means Johnston, of Greenwood, for appellees.

J. Morgan Stevens, of Jackson, for appellees.

Argued orally by **W. A. Henry**, for appellant, and by **W. W. Venable** and **J. Morgan Stevens**, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

J. B. Gully, state tax collector, brought suit against Pearl McClellan and various members of the board of supervisors of Leflore county, and against Means Johnston, trustee, in a deed of trust given by Pearl McClellan to secure a loan made to her by said board of supervisors out of sixteenth section township funds, to collect said loan. The bill sets out the various members of the board of supervisors and the sureties on their official bonds for various years, and alleges that the state tax collector, in pursuance of his official duty, made an investigation of the allowances of the board of supervisors of Leflore county, and instituted suit, as was his duty, to collect said loan. It was then alleged that in December, 1926, said board of supervisors (all members being present) voted for and made an unlawful allowance of two thousand dollars in favor of Miss Pearl McClellan, said amount being ordered paid from the funds of Leflore county, said order being passed on December 6, 1926, and said loan being evidenced by note and· deed of trust dated December 30, 1926; and that said warrant was issued on December 30, 1926, for said amount of said loan out of

the sixteenth section township funds of Leflore county, Mississippi. A copy of said deed of trust and note and the order of the board of supervisors making said loan are made exhibits to the bill. It was then alleged that the minutes of the board of supervisors do not show that any appraisement, as required by law, was made as to the value of the property, the order showing only that the property was inspected, and it was not shown that a committee reported that the property was ample security for the loan, not showing the value to be twice the loan, and the title was not approved by an attorney. It was then alleged that there was due two thousand dollars principal, two hundred twenty dollars interest, and two hundred twenty-two dollars attorney's fee, as provided in the note; that the loan to Miss Pearl McClellan was illegally made; and that each of the defendants are personally liable for the sum of two thousand four hundred forty-two dollars, and that the complainant is entitled to a decree for said sum, irrespective of the conditions, provisions, and stipulations of the order of the board of supervisors in regard to the making of said loan, and that it was past due and unpaid. It was further alleged that, by reason of the fact that there was no law authorizing the loan to Pearl McClellan, same was an unlawful, unwarranted, and abusive assertion of power, and rendered each member of the board of supervisors personally liable, with the sureties on their official bonds, for the entire amount. It was further alleged that on December 5, 1932, as appears in the minutes, the board of supervisors passed an order extending said loan, and that it was their duty to safeguard, protect, and safely invest all money in the sinking fund or the funds of said township, and not to make any illegal expenditures thereof, and, if a mistake was made, to correct same, and require the collection of loans, and to repay the money into the sixteenth section township funds, which duty the board

of supervisors failed and refused to perform. The bill then prayed for a decree against Pearl McClellan and the various members of the board of supervisors, and for a foreclosure of the deed of trust, and for such other and further relief as complainant might be entitled to.

The order of the board of supervisors making said loan in 1926 recited as follows:

"Came on for consideration the application for a loan of two thousand dollars out of the funds of township 21, range 2 west, of Leflore county, now available for that purpose, for a term of three years, providing for the payment of six per cent interest per annum, annually, upon the following described real estate, to-wit:

"Lot 4 of Nichols subdivision of block 7 of West Kimbrough Addition to the city of Greenwood, and the said application having been referred to the loan committee of the board, and said committee having reported in writing and recommended said application, and the board being duly advised is of the opinion that said property offered is ample security, and that it is for the best interest of the county that said loan be made.

"It is therefore considered and ordered that said application for said loan upon said terms be and the same is granted, upon the following conditions, to-wit: Applicant must execute deed of trust upon above-described real estate, which shall be a first lien, and proper principal and interest notes for time mentioned, and also file a policy of fire insurance in the sum not less than two thousand dollars with loss clause payable to Leflore county, and an abstract of title showing the fee simple and unencumbered title, the same shall be examined, passed upon by the attorney for this board, and upon his approval, the clerk of this board is ordered to issue warrant to close said loan."

At the September, 1932, meeting, the board passed an order extending this loan for ninety days; and at the

December, 1932, meeting a special order was passed by the board extending this loan for a period of one year.

The bill was demurred to by a general and special demurrer, the general demurrer setting up that there was no equity on the face of the bill; the cause of action was barred by the statute of limitations, and that the state tax collector has no authority to institute or maintain this suit, and the special demurrer, that the bill is multifarious. The court below sustained the demurrers, from which the tax collector appeals.

By section 6764, Code 1930 (chapter 283, Laws 1924), it is provided that:

"All funds arising from the disposition of the sixteenth sections now on hand, and all such as shall accrue, together with all unexpended balances of annual rentals which shall accumulate, shall be loaned out for a term not exceeding five years, to be fixed by the board of supervisors, at a rate of interest not less than six per cent per annum, to be fixed likewise, the borrower in all cases securing the same by a first trust deed upon improved real estate, duly filed and recorded; or may be invested in the state of Mississippi bonds, municipal bonds, county or county district bonds, or bonds of the United States; but a loan shall not be made until after the borrower shall have furnished at his own expense, a complete abstract of title to the land offered as security for such loan, together with a certificate attached signed by the attorney for the board of supervisors or some reputable attorney satisfactory to said board, setting forth that in his opinion the reputed owner has a perfect title to said land and that a trust deed executed properly, will be a first lien thereon. Provided, however, in all cases, the board of supervisors or a committee therefrom shall have first inspected the proposed security and appraised the same. No loan shall be made for a greater amount than one-half of the actual value of the land, to be deter-

mined by appraisement by the board of supervisors or its committee, and said appraisement shall be reported in writing and said report recorded on the minutes of the board of supervisors. When said loan is made the recorded trust deed and the abstract of title shall be turned over to and held by the county depository in which the funds from which the loan is made are deposited. The board of supervisors shall have authority to lend such funds to the board of trustees of any agricultural high school or consolidated school in the county, at the rate of interest heretofore provided and for a term not exceeding twenty years, for the erection, equipment or repair of county agricultural high schools, or consolidated schools. The board of supervisors of any county in which sixteenth section school funds shall have been loaned to the board of trustees of an agricultural high school or consolidated school shall levy annually upon a consolidated school district, in case the loan is to a consolidated school, a special tax to be used exclusively in paying the interest on such loans and in providing a sinking fund for their redemption. If any such funds shall be loaned or invested in any other manner, each officer concerned in making such loan and investment or suffering the same to be made, in violation of the provisions of this section, shall be liable personally and on his official bond for the safety of the funds so loaned. All evidences of indebtedness shall include a provision for the payment of ten per cent attorney's fee, in case of default in payment.''

It will be noted from the concluding paragraph of this section that if any such funds shall be loaned or invested in any other manner than as thus provided, the officer making such illegal loan shall be personally liable on his official bond.

The loan made in the case at bar was for a purpose authorized by law, and it does not fall within section 259,

Code 1930, consequently there would be no liability on the board of supervisors, unless imposed by the last part of the statute. We think the concluding paragraph, as quoted above, is the measure of liability of the board of supervisors. The making of the loan is not rendered illegal because the legislature expressly provided for failure to observe the proceedings required in the first part of the statute. It was recognized by the legislature that mistakes and errors might be made in the making of such loans, and if the loans were thereby declared to be void, it might impose needless hardships upon the borrower of funds being immediately required to pay the money borrowed to be invested in some legitimate business transaction.

As the making of a loan involves discretion, there would be no liability because the loan was for a purpose authorized by law, and the board would fall within the protection of the rule announced in the cases of Paxton v. Baum, 59 Miss. 531, State v. Green, 111 Miss. 32, 71 So. 171, and Miller, State Revenue Agt., v. Tucker, 142 Miss. 146, 105 So. 774, in all of which it was held that where a person was exercising a judicial or quasi judicial power in making allowances allowed by law, but not following statutory directions as to how the loan was to be made, there was no liability for so doing. In State v. Green, supra, the court held there was no liability because the money was expended for a purpose authorized by law, although not in the manner directed by the statute. Under section 6764, above quoted, the loan in the case at bar was valid, whether made in conformity to the directions of the statute or not. If, for any reason, the security taken had been insufficient, and if the funds should be uncollected when due, then the board would become personally liable on their official bonds for the loss occasioned thereby. They would only be liable to a suit when it developed that the security was insufficient to

bring the amount of the loan with interest. Therefore, there was no liability against the board of supervisors until the maturity date should be reached and the security was exhausted.

Boards of supervisors are charged with the duty of keeping the sixteenth section funds loaned out for the benefit of the schools, and it is not the purpose of the law to forbid renewals of loans, where the security is adequate, from time to time. The object of the sixteenth section funds is to produce revenue for schools within the township. The funds are not expected to lie idle in the treasury, and when a loan is made which is satisfactory, there is no reason why it should not be renewed from time to time. The right of the board of supervisors to extend loans is recognized in Gaines v. Faris, 39 Miss. 405, where a note was executed, in part, for the purchase money of land sold under the trust deed, and partly for the residue owing on the original note which was admitted to be valid. The purchase was made by two of the obligors to that note who executed the note sued on. The transaction was really a continuation of the previous indebtedness, and the court there said that "it is very clear that the board of police or treasurer had the power to renew the note and continue the indebtedness, taking new sureties. This ground of defence is, therefore, not tenable."

See, also, Moore v. Redding, 69 Miss. 841, 13 So. 849, where it was held that the payment of interest was a sufficient consideration for an extension. See, also, 8 C. J. 425, and notes.

In considering this question, it must be remembered what the purpose of the funds loaned is. In the case of sixteenth section township funds, the purpose is to provide interest to be devoted to school purposes. They are expected to be loaned out so that the fund will be increased and the interest used for educational purposes.

The case of National Surety Company v. Miller, 155 Miss. 115, 124 So. 251, is in harmony with the cases of State v. Green and Miller v. Tucker, cited supra.

As to the effect of sixteenth section township funds, the case of Miller v. Gore, 146 Miss. 327, 113 So. 203, is not applicable. To begin with, the statute in that case did not provide what the effect of the statute would be should the security required be not given, and the court there held that giving the security was a condition precedent to the validity of the loan, and that the borrower not having given the security required by law was not entitled to retain the money. The question is different in the case at bar.

In Walton et al. v. Colmer, District Attorney (Miss.), 147 So. 331, 332, it was held a board of supervisors were liable on their bonds for failure to perform ministerial duties, but were not liable for judicial acts which involved the exercise of discretion. We held in that case that, "if the board were not discharging the duties of a ministerial office, but a judicial one, they would not be liable to the state or other persons for injury resulting therefrom."

As we construe these decisions, they are not inconsistent with Miller v. Gore, 146 Miss. 327, 113 So. 203. The conclusion reached by us in that section 6764, Code 1930, imposes its own liability, and neither sections 197 nor 259 govern in this case, the case being governed by the statute itself, which imposes an additional liability on the board of supervisors for a noncompliance with its directions. As to boards who do not make the loans, we do not see how they can be held liable for failure to collect funds loaned by their predecessors, and this would fall within section 6770, Code 1930. The legislature imposes upon the superintendent of education the duty of collecting loans, and imposes upon the auditor the duty to furnish the superintendent statements quarterly of the

loans due, and authorizes him to employ an attorney, if necessary, whose compensation shall be not more than ten per cent of the collections.

It was probably the purpose of the legislature in enacting section 6770, Code of 1930, to save the public funds ten per cent of the cost of collecting.

We are therefore, of the opinion that the court below was correct in sustaining the demurrers.

Affirmed.